FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 10, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OSCAR VAZQUEZ-RAMIREZ,<br><br>Defendant. | NO: 2:22-CR-87-RMP-1<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant's Motion to Dismiss, ECF No. 41. The Government opposed in its response, ECF No. 46, and Defendant replied, ECF No. 51. Subsequently, Defendant filed a Notice of New Authority, ECF No. 56. Defendant is charged with being an Unlawful Alien in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(5)(A), 924 (a)(2). ECF No. 1. Defendant seeks to dismiss these charges, challenging the constitutionality of 18 U.S.C. § 922(g)(5) as applied to him.

The Court heard oral argument on the motion on December 12, 2023. Defendant, who is not in custody, was present and represented by Assistant Federal Defenders John McEntire and Carter Powers Beggs. Assistant United States

Attorney Michael Ellis appeared on behalf of the Government.  The Court admitted exhibits; heard testimony from Professor Gulasekaram, an expert witness; and heard arguments by counsel.  Having reviewed the parties' filings and exhibits, considered the testimony and arguments presented at the hearing, and reviewed the relevant law, the Court is fully informed.

## BACKGROUND

Defendant was brought to the United States by his father when he was seven years old.  ECF No. 41-2 at 1.  His father obtained legal status for himself, but neither Defendant's father nor Defendant ever completed the process for Defendant to obtain legal status.  *Id*.  Defendant attended elementary, middle, and high school in Washington State.  *Id*.  Defendant has two children who reside in Washington State and who are United States citizens.  *Id*.

On December 15, 2021, an Othello, Washington, police officer stopped Defendant for failing to yield at a crosswalk while driving.  ECF No. 41 at 8.  During the interaction with law enforcement, Defendant revealed that he had a firearm on his person in his waistband, and he was arrested for possessing the firearm and for driving under the influence of alcohol.  *Id*. at 9.  On July 19, 2022, Defendant was indicted for being an Unlawful Alien in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2).  ECF No. 1.

Defendant now seeks to dismiss these charges, arguing that 18 U.S.C. § 922(g)(5) is unconstitutional as applied to him, because the statute violates his Second Amendment rights.  ECF No. 41.

## LEGAL STANDARD

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend. II.  Section 922(g)(5)(A) makes it unlawful for "an alien . . . illegally or unlawfully in the United States . . . [to] possess in or affecting commerce, any firearm."  18 U.S.C. § 922(g)(5)(A).

In 2022, the Supreme Court articulated a new test for firearm regulations in *N.Y. State Rifle & Pistol Ass'n v. Bruen*:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022) (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Several courts have addressed the constitutionality of § 922(g)(5), both facially and as applied, in the wake of *Bruen.*  At this time, a majority of the courts has found § 922(g)(5) constitutional, including the Nevada district court decision in

*United States v. Gil-Solano*, No. 3:23-CR-00018-MMD, 2023 WL 6810864 (D. Nev. Oct. 16, 2023).  In *Gil-Solano*, the court wrestled with whether the plain text of the Second Amendment includes unlawfully present noncitizens, ultimately choosing to "assume, without deciding" that they fall within the scope of the Second Amendment.  *Id*. at *3.  The court then found that the Government met its burden to establish that § 922(g)(5) is "consistent with this Nation's historical tradition of firearm regulation."  *Id*. (citing *Bruen*, 597 U.S. at 17).

As far as this Court is aware, the sole district court outlier finding § 922(g)(5) unconstitutional is a Western District of Texas decision that found the statute facially unconstitutional.  *See United States v. Sing-Ledezma*, No. EP-23-CR-823(1)-KC, 2023 WL 8587869 (W.D. Tex. Dec. 11, 2023).  In that case, the court first determined that § 922(g)(5) regulated possession of a firearm, not possession by an unlawfully present noncitizen, and the conduct therefore was plainly protected by the Second Amendment.  *Id* at *7.  After an extensive foray through history, the court concluded that "the Government has not met its burden of proving a historical tradition sufficiently analogous to justify disarming all unlawfully present aliens."  *Id*. at *18.

This Court is not aware of any courts that have addressed § 922(g)(5) through an immigration framework, as suggested by the Government in this case.

/ / /

/ / /

## DISCUSSION

Defendant argues that, based on the *Bruen* test, § 922(g)(5)(A) is unconstitutional as applied to him.  ECF No. 41 at 5.  Defendant contends that *Bruen* articulates a two-step inquiry: (1) first, an individual must show that the Second Amendment's plain text covers his conduct, which Defendant frames as either a conduct-driven or status-driven inquiry; and (2) if the individual meets the first step, the Government must then prove that the statute is consistent with the Nation's historical tradition of firearm regulation.  *Id*. at 12.  Under the second step, Defendant argues that the required showing by the Government depends on whether the challenged regulation falls into one of two paths.  *Id*. at 28–31.  "Path one" is taken when the regulation addresses a problem that has persisted since the 18th century, in which case the Government must point to a "distinctly similar" historical regulation.  *Id*. at 28–29.  "Path two" is taken when the challenged regulation was "unimaginable" at the founding, in which case the court must employ "reasoning by analogy" to determine if the challenged regulation is "relevantly similar" to a historical regulation.  *Id*. at 29–30.

Defendant contends that he is protected by the Second Amendment because he is part of "the people" referenced in the Second Amendment and that his conduct of possessing a firearm to protect his family is covered by the Second Amendment and *Bruen*.  *Id*. at 6.  Thus, Defendant argues that he has satisfied step one, and the Government must then satisfy the historical requirement under step two.  *Id*.

1  Defendant further argues that, under either path one or path two, the Government

2  cannot show that § 922(g)(5)(A) is "consistent with the Nation's historical tradition

3  of firearm regulation" as required by *Bruen*. *Id*. at 31–36. Therefore, Defendant

4  argues, the statute is unconstitutional as applied to him. *Id*. at 37–38.

5      In contrast, the Government contends that the Court should use an

6  immigration framework to analyze § 922(g)(5)(A) rather than employing a Second

7  Amendment framework. ECF No. 46 at 1. At the hearing, the Government

8  articulated the immigration analysis as a step zero that resolves the issue before

9  reaching the *Bruen* analysis. The Government argues that the statute "regulat[es] the

10  conduct of aliens unlawfully present in the United States," and is "directly related to

11  immigration." *Id*. Therefore, the Government claims that the Court's analysis

12  should consider Congress's expansive authority in the immigration realm, rather

13  than conducting a *Bruen* analysis. *Id*.

14  **Immigration Framework**

15      The Government contends that § 922(g)(5) is subject to rational basis review,

16  because the provision relates to immigration, controlling crime, and ensuring public

17  safety. ECF No. 46 at 1. The Government argues that "Congress's expansive

18  authority over immigration affairs is 'largely immune from judicial control.'" *Id*. at

19  4 (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). The Government notes that the

20  "deferential standard of review" is limited to considering whether the challenged law

21  is "facially legitimate and bona fide." ECF No. 46 at 4 (quoting *Kleindienst v.*

*Mandel*, 408 U.S. 753, 769 (1972)).  Thus, the Government argues that, because §

922(g)(5) regulates "aliens and immigration-related affairs," it is functionally

different from other § 922(g) prohibitions and is only subject to rational basis

review.  ECF No. 46 at 6.

In response, Defendant relies on *United States v. Muñoz-De La O*, where this

Court stated that "Congress's 'plenary power to create immigration law . . . is

subject to important constitutional limitations,'" 586 F. Supp. 3d 1032, 1043 (E.D.

Wash. 2022) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001)).  ECF No. 51 at

8–9.  Defendant further argues that *Bruen*'s new test applies to all Second

Amendment challenges of firearm regulations, without an exception for those that

also implicate immigration.  *Id*. at 9.

Courts have a "limited scope of judicial inquiry into immigration legislation."

*Fiallo*, 430 U.S. at 792.  "[T]he power over aliens is of a political character and

therefore subject only to narrow judicial review."  *Hampton v. Mow Sun Wong*, 426

U.S. 88, 101 n.21 (1976).  Indeed, "Congress regularly makes rules that would be

unacceptable if applied to citizens."  *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

Accordingly, the fact that a rule regarding noncitizens implicates constitutional

rights is not dispositive of the constitutionality of the rule.  *See Mandel*, 408 U.S. at

765.

Prior to *Bruen*, and using a test abrogated by *Bruen*, the Ninth Circuit had held

that § 922(g)(5) was subject to intermediate scrutiny because it did not burden a core

Second Amendment right, and the burden it imposed was tempered because a person may remove himself from the prohibition by acquiring lawful immigration status. *United States v. Torres*, 911 F.3d 1253, 1263–64 (9th Cir. 2019). The court in *Torres* held that § 922(g)(5) met the intermediate scrutiny standard, because "the government's interests in controlling crime and ensuring public safety are promoted by keeping firearms out of the hands of unlawful aliens" and these "important government interests 'would be achieved less effectively' were it not for § 922(g)(5)." *Id*. at 1296 (quoting *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015)). A few years later, *Bruen* held that means-end scrutiny, such as strict or intermediate scrutiny, does not apply in the Second Amendment context. 597 U.S. at 19. "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*.

   *Bruen* did not specifically address § 922(g)(5), which is unique compared to other § 922(g) provisions by targeting "an alien . . . illegally or unlawfully in the United States." 18 U.S.C. § 922(g)(5)(A). Because Congress can make laws regarding noncitizens that would be "unacceptable if applied to citizens," *see Mathews*, 426 U.S. at 80, and such laws are "subject only to narrow judicial review," *see Mow Sun Wong*, 426 U.S. at 101 n.21, the Court finds that *Bruen*'s new test does not apply to § 922(g)(5) in the same way that it applies to other § 922(g) provisions. Although § 922(g)(5) implicates Second Amendment rights, such implication is not

dispositive of the constitutionality of the rule, because the statute focuses on noncitizens.  *See Mandel*, 408 U.S. at 765.

The Court agrees with the Government that rational basis is the correct approach to § 922(g)(5) due to its focus on immigration.[1]  Section 922(g)(5) satisfies a rational basis test, because preventing unlawfully present noncitizens from obtaining firearms is rationally related to the legitimate government purpose of reducing crime and ensuring public safety.  *See Casa Libre/Freedom House v. Mayorkas*, 637 F. Supp. 3d 805, 815–18 (C.D. Cal. 2022).  Accordingly, the differential treatment of unlawfully present noncitizens based upon their status as unlawful and not law-abiding is reasonable and not arbitrary.  *See id*.

In support of this analysis, the Court notes that the Ninth Circuit found § 922(g)(5) constitutional under the heightened intermediate scrutiny standard.  *See Torres*, 911 F.3d at 1263–65.  The court in *Torres* found that "the government's interests in controlling crime and ensuring public safety are promoted by keeping firearms out of the hands of unlawful aliens," and that these "important government interests would be achieved less effectively were it not for § 922(g)(5)."  *Id*. at 1264 (internal quotations and citations omitted).  Evaluating § 922(g)(5) within an

---

[1] The Court acknowledges that in *District of Columbia v. Heller*, the Supreme Court indicated that rational basis is not the correct standard to evaluate Second Amendment challenges.  554 U.S. 570, 628 n.27 (2008).  However, *Heller* did not address § 922(g)(5) or firearm regulations specifically for noncitizens, and, therefore, this Court finds that its conclusion is not applicable to this case.

immigration framework, and, therefore, under a rational basis review, the Court

finds that § 922(g)(5) satisfies rational basis review and is constitutional as applied

to Defendant, who has not contested that he is an unlawfully present noncitizen.

In the alternative, and due to the lack of clarity surrounding how the *Bruen*

analysis should be applied in varied circumstances, the Court will proceed to analyze

the statute under the test proposed by the Defendant and articulated in *Bruen*.

***Bruen* Analysis**

The *Bruen* test first asks whether "the Second Amendment's plain text

covers an individual's conduct." 597 U.S. at 17. If it does, "the Constitution

presumptively protects that conduct." *Id*. To justify a regulation of the

protected conduct, "the government must demonstrate that the regulation is

consistent with this Nation's historical tradition of firearm regulation." *Id*.

***Step One: Second Amendment Protection***

Defendant argues that courts fall into two "camps" in determining whether the

Second Amendment covers an individual's conduct. ECF No. 41 at 21–23. The

first "camp" articulated by Defendant focuses on the conduct being regulated, not

the person being regulated. *Id*. at 20–21. The second "camp" conducts a "more

nuanced" status-based inquiry, focusing both on conduct and whether the regulated

person is included among "the people" protected by the Second Amendment. *Id*. at

21–23. Within the second "camp," Defendant identifies two "factions." *Id*. The

first faction categorically bars noncitizens from being part of "the people," and the second finds noncitizens can be part of "the people." *Id*.

The Government responds that, rather than choosing one "camp," Defendant must meet both the conduct-based and status-based inquiries. ECF No. 46 at 7–8. The Government relies on *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1044 (11th Cir. 2022), arguing that the Eleventh Circuit found that satisfying the status-based inquiry is a necessary but not sufficient condition to enjoy Second Amendment protection. *Id*. at 8.

### Conduct-Based Inquiry

Defendant argues that his conduct is protected under the Second Amendment, because the conduct being regulated is possessing a firearm "as a status-less person." ECF No. 51 at 16–17; *see also* ECF No. 41 at 23.

The Government contends that Defendant's conduct is not protected, both because Defendant is unlawfully present in the United States and because his conduct was unlawful under state law, as Defendant's possession of the concealed firearm without a concealed weapon license violated Wash. Rev. Code § 9.41.050(1)(a). ECF No. 46 at 16. The Government submitted two exhibits for support: Exhibit 1, the police report from Defendant's arrest, which states that Defendant admitted that he had a gun tucked in his waistband, and that he did not have a concealed carry permit; and Government Exhibit 2, a State of Washington Department of Licensing confirmation by a custodian of records that there are no

records of any concealed pistol licenses for Defendant.  *See* ECF Nos. 46-1 at 2 and 54.

The Government notes that, while *Bruen* confirmed that Second Amendment protection extends to carrying handguns publicly for self-defense, *Bruen* simultaneously confirmed that Second Amendment protection does not extend to existing shall-issue statutes proscribing concealed carry.  ECF No. 46 at 16–17. "Shall-issue" licensing schemes exist where concealed carry licenses must be issued when applicants satisfy certain threshold requirements, which is the scheme employed in Washington State.  *Id* (citing *Bruen*, 597 U.S. at 13 n.1).  The Government argues that *Bruen* invalidated only "may-issue" regimes but did not affect "shall-issue" regimes.  ECF No. 46 at 16–17.  Thus, the Government contends that the Second Amendment does not protect possession of a concealed weapon without a concealed weapon permit in a "shall-issue" regime, such as Washington State.  *Id*.  Therefore, the Government argues that because Defendant's conduct of having a concealed weapon without a concealed weapon permit was unlawful under the Washington State law, which remains valid post-*Bruen*, Defendant's action is not protected by the Second Amendment.  *Id*. at 17.

The Court in *Bruen* noted that "[s]tates could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly." 597 U.S. at 59.  Washington allows individuals to openly carry firearms. *See* Wash. Rev. Code § 9.41.270 (listing restrictions on open carry but not

prohibiting open carry).  To carry a concealed weapon in Washington, an individual

must obtain a license.  *See* Wash. Rev. Code § 9.41.050(1)(a) ("Except in the

person's place of abode or fixed place of business, a person shall not carry a pistol

concealed on his or her person without a license to carry a concealed pistol.").

Additionally, the Washington law, Wash. Rev. Code. § 9.41.070, makes clear that a

concealed carry license shall be issued if certain requirements are met, thus

employing a "shall-issue" regime permissible under *Bruen*.  Therefore, Defendant's

conduct in violation of the lawful state prohibition is not protected by the Second

Amendment.  *See Bruen*, 597 U.S. at 59.

Accordingly, because Defendant's conduct is not protected by the Second

Amendment, § 922(g)(5) is constitutional as applied to Defendant.

### *Status-Based Inquiry*

Defendant also argues that he is protected under the status-based inquiry,

because he is part of "the people."  ECF No. 41 at 22, 27.  Conceding that Defendant

is not a lawful resident of the United States, Defendant contends that this Court

should adopt the Seventh Circuit's "substantial connections" test outlined in *United

States v. Meza-Rodriguez*, 798 F.3d 664 (7th Cir. 2015), based on the test articulated

by the Supreme Court in *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990).

The test allows noncitizens to be among "the people" protected by the Second

Amendment "when an alien grows up in this country, attends school in this country,

develops relationships in this country, and sporadically works in this country."  ECF

No. 51 at 23 (citing *Meza-Rodriguez*, 798 F.3d at 670–71).  Defendant contends that he has met the substantial connections test by satisfying these requirements.  ECF No. 51 at 23; *see also* ECF Nos. 41-2 and 51-1.  Defendant claims that his father brought him to the United States when he was a child; he has continuously lived in the United States for over three decades; he attended elementary, middle, and high schools in the State of Washington; he speaks English; his two children are citizens of the United States; he works to support his family; his children attend schools in the State of Washington; and he attends church every week.  ECF No. 41 at 27.

The Government argues that Defendant's status is not protected by the Second Amendment, because he is neither a "law-abiding citizen" nor an "American," and, therefore, he is not a member of "the people."  ECF No. 46 at 10.  The Government also argues that Defendant does not satisfy the "substantial connections test," because he "has not taken any steps along the road to citizenship," "has never held any form of lawful immigration status within the United States," and "has not and cannot become 'a member of the national or political community.'"  *Id*. at 14–15 (citations omitted).[2]  Additionally, the Government argues that status is a necessary,

---

[2] The Government cites *United States v. Zakharov* for its holding that an "alien" does not receive Fourth Amendment protection "until he 'has assumed the complete range of obligations that we impose on the citizenry.'" 468 F.3d 1171, 1179–80 (9th Cir. 2006) (quoting *United States v. Barona*, 56 F.3d 1087, 1093–94 (9th Cir. 1995)).  However, Defendant points out that, while *Barona* appears to quote the Supreme Court's decision in *Verdugo-Urquidez* for this analysis, it in fact quotes Judge Wallace's dissent in the Ninth Circuit's *Verdugo-Urquidez*

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 14

but not sufficient, condition for Second Amendment protection, and, because the

Government contends that Defendant's conduct is not protected, his status alone

cannot provide Second Amendment protection. *Id*. at 8 (citing *Jimenez-Shilon*, 34

F.4th at 1044).

The Court need not resolve the status-based inquiry, because status alone

cannot provide Second Amendment protection. *See* 597 U.S. at 17; *see also*

*Jimenez-Shilon*, 34 F.4th at 1044. The Court agrees with the Government that status

is a necessary, but not sufficient, condition for Second Amendment protection. *See*

*Jimenez-Shilon*, 34 F.4th at 1044. To satisfy the *Bruen* test of whether the Second

Amendment covers an individual's conduct, Defendant's conduct must be protected.

*See* 597 U.S. at 17. Here, as discussed previously, Defendant's conduct of

possessing a concealed weapon in Washington without a concealed weapon permit

is not protected under the conduct-based inquiry. Therefore, Defendant has not

satisfied the conduct-based inquiry, regardless of the status-based inquiry. *See id*.

The Court finds that because Defendant has not satisfied step one regarding

the conduct-based inquiry, § 922(g)(5) is constitutional as applied to Defendant, and

the Government is not required to demonstrate the statute is consistent with the

Nation's historical tradition of firearm regulation. *See* 597 U.S. at 17. However, in

decision. ECF No. 51 at 19–21. While this misleading citation does not change
the Court's analysis, the Court notes the error for the record.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 15

the alternative, and to create a robust record for review, the Court will proceed to discuss the arguments presented under step two.

***Step Two: Historical Analysis***

Under *Bruen*, "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." 597 U.S. at 26. However, if the regulation was "unimaginable at the founding," courts must conduct "reasoning by analogy" to determine "whether a historical regulation is a proper analogue" and is "relevantly similar" to the modern regulation. *Id*. at 28–29.

Defendant primarily relies on his expert witness, Professor Pratheepan Gulasekaram, who provided a Declaration and testimony regarding historical immigration laws and laws regulating firearms. *See* ECF No. 41-1. Citing this Declaration, Defendant argues that the problem of unlawfully present noncitizens possessing firearms existed when the Nation was founded, and that, therefore, the Government must provide a "distinctly similar historical regulation" for § 922(g)(5)(A) to be valid. ECF No. 41 at 31–32. Defendant argues that the Government cannot show such a historical regulation, because colonial legislators could have regulated noncitizens' firearms, but they did not. *Id*. at 32–33. Further, Defendant points to the Alien and Sedition Acts of 1798, which authorized arrest,

imprisonment, and deportation, but not disarmament, of aliens.  ECF No. 51 at 24–27.

Defendant argues that, even if the Court analyzes § 922(g)(5) under the analysis for regulations "unimaginable" at the founding, the Government cannot show a "relevantly similar" historical analogue.  ECF No. 41 at 34.  Defendant argues that religious-based, racially-based, and loyalty-based disarmament acts all fail as historical analogues.  *Id*. at 34–37; ECF No. 51 at 27–32.  Defendant argues that loyalty-based disarmaments are not "relevantly similar," because loyalty oaths are found only in the naturalization procedure, not in all American immigration systems procedures, such as applying for legal permanent resident status, even though § 922(g)(5) allows legal permanent residents to possess guns.  ECF No. 51 at 29–30.  Defendant further argues that statutes restricting firearms for lawbreakers are not sufficiently similar to § 922(g)(5), because it equates those who threaten to do harm (who were banned from firearm possession in the 1850s) with those who are status-less (who are currently banned).  *Id*. at 31–32.

The Government argues that this problem was unimaginable at the founding, because migration to the United States was not restricted until 1875.  ECF No. 46 at 17–19.  The Government contends that historical firearm restrictions on individuals who did not swear an oath of allegiance are sufficiently analogous to restrictions on aliens unlawfully present in the United States.  *Id*. at 19–22.  Further, the Government argues that historical regulations that prohibited firearm possession by

those unwilling to comply with the law are "relevantly similar," because aliens

unlawfully in the United States are similarly insufficiently "law-abiding."  *Id*. at 22–

23.

To this Court's knowledge, the only post-*Bruen* case in the Ninth Circuit to

address this issue did not consider whether the problem had persisted since the

founding or was unimaginable at the founding, factors identified by the parties in

this case.  *See Gil-Solano*, 2023 WL 6810864.  Instead, the court stated that "the

government must demonstrate that the provision has a 'well-established and

representative historical analogue,' though they need not identify a 'historical

twin.'"  *Id.* at *2 (quoting *Bruen*, 597 U.S. at 30).  That court considered "(1)

whether § 922(g)(5)(A) and historical restrictions 'impose a comparable burden on

the right of armed self-defense' and (2) 'whether that burden is comparably

justified.'"  *Id*. (quoting *Bruen*, 597 U.S. at 29).  The court found that "[s]tatus-based

prohibitions are reprehensible, unconstitutional, and not analogous to §

922(g)(5)(A); however, . . . the colonial tradition of imposing oath-based restrictions

on the possession of firearms is relevantly similar to § 922(g)(5)(A), such that it is

consistent with the Second Amendment."  *Id*. at *3.  The court concluded that §

922(g)(5)(A) was facially constitutional.

This Court agrees with the Government and the Nevada district court in *Gil-*

*Solano* that loyalty oaths provide the required "historical tradition of firearm

regulation."  *See* 597 U.S. at 17.  The Government points out that Defendant's expert

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 18

listed several historical regulations that barred persons deemed disloyal or of

questionable allegiance from possessing firearms.  *See* ECF No. 46 at 20–21.  For

example, a 1776 Massachusetts act recommended disarming those who "are

notoriously disaffected to the cause of America, or who refuse to associate to defend

by arms the United American Colonies . . ."  ECF No. 41-1 at 46–47.  A 1779

Pennsylvania act disarmed any person "who shall not have taken any oath or

affirmation of allegiance to this or any other state . . ."  *Id*. at 48–49.

      Although Defendant argues that loyalty oaths are not sufficiently similar to §

922(g)(5) because § 922(g)(5) hinges on immigration status rather than loyalty, *see*

ECF No. 51 at 30–31, the Court finds that loyalty oaths are sufficiently analogous to

the language of § 922(g)(5), which refers to an "alien . . . illegally or unlawfully in

the United States."  Such "aliens," particularly those "unlawfully in the United

States," would not be presumed to have any allegiance to the United States.  While

the Court recognizes that regulations barring firearm possession based on a failure to

take a loyalty oath are not identical to the regulation in § 922(g)(5), the historical

regulation need not be a "historical twin" or a "dead ringer."  *See* 597 U.S. at 30.

Indeed, as the court in *Gil-Solano* noted, "immigration laws are the 'imperfect

system the United States has set up as a proxy for national allegiance.'"  *Gil-Solano*,

2023 WL 6810864, at *5 (quoting *United States v. Leveille*, 659 F. Supp. 3d 1279,

1284 (D. N.M. 2023)).

Accordingly, the Court finds that § 922(g)(5) is "consistent with this Nation's historical tradition of firearm regulation," and is constitutional as applied to Defendant. *See Bruen*, 597 U.S. at 17.[3]

## CONCLUSION

The Court finds that § 922(g)(5) satisfies rational basis review under an immigration framework and is constitutional as applied to Defendant, who has not contested that he is an unlawfully present noncitizen. Alternatively, the Court finds that Defendant's conduct of possessing a concealed weapon without a concealed weapon permit is not protected under the Second Amendment, and therefore § 922(g)(5) is constitutional as applied to Defendant. The Court further finds that § 922(g)(5) is "consistent with this Nation's historical tradition of firearm regulation." *See Bruen*, 597 U.S. at 17. Therefore, the Court finds that § 922(g)(5) does not violate Defendant's Second Amendment rights.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, **ECF No. 41**, is **DENIED**.

---

[3] Due to the number of courts currently grappling with the uncertain and quickly evolving nature of analyzing § 922(g)(5) in the wake of *Bruen*, the Court notes that, as far as this Court is aware, the most recent decision on this issue is *United States v. Santos-Santana*, No. 23-311, 2024 WL 98556 (D. P.R. Jan. 8, 2024). While not relied on in this Court's Order, the Court notes that the Puerto Rico district court came to a similar conclusion, finding § 922(g)(5) facially constitutional due to the sufficiently similar historical restrictions on firearm possession by those who did not swear an oath of allegiance. *Id*. at *5.

1    **IT IS SO ORDERED**.  The District Court Clerk is directed to file this Order

2 and provide copies to counsel.

3    **DATED** January 10, 2024.

4

5                                    ___*s/ Rosanna Malouf Peterson*___
                                       ROSANNA MALOUF PETERSON
                                       Senior United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 21